**STATE of Missouri ex rel. STATE HIGH-WAY COMMISSION of Missouri, Respondent,**

v.

**William KOBERNA et al., Defendants, Shirley Rawlinson, Appellant.**

**No. 50981.**

Supreme Court of Missouri, Division No. 2.

Dec. 13, 1965.

Robert L. Hyder, Jefferson City, Samuel C. Ebling, Kirkwood, for plaintiff-respondent.

Brackman, Copeland, Oetting, Copeland, Walther & Schmidt, Paul Brackman, R. W Copeland, Clayton, for defendant-appellant.

STOCKARD, Commissioner.

In this action for condemnation of land for highway purposes the jury award of just compensation to Shirley Rawlinson,

the owner of record, was $22,000, and she has appealed. The difference between the award and that to which appellant claims she is entitled under her evidence exceeds $15,000. Appellate jurisdiction is in this court.

The land in question consisted of a seven-acre tract located in the southern part of St. Louis County near the intersection of Lindbergh Boulevard and Lemay Ferry Road. The portion taken for highway purposes consisted of 4.56 acres, leaving 2.44 acres which is landlocked except for access to a platted, but not constructed, road. The date of taking was stipulated to have been November 16, 1961, and it was further stipulated that Shirley Rawlinson, the record owner and named defendant, was in fact a "straw party" for the actual owner Walter Scott, but he was never substituted as a party defendant in the action.

Appellant's first two points are that the trial court erred in giving Instruction 5 and in refusing her requested Instruction A. To rule these points we must first set out the language of Instruction 4, not challenged by appellant, which was as follows:

"You are instructed that in determining the just compensation to which the Defendant is entitled you shall first determine the fair market value of all of Defendant's land immediately prior to November 16, 1961, and you shall then determine the fair market value of the Defendant's land remaining after November 16, 1961, and the difference is the just compensation to which the Defendant is entitled."

Instruction 5, which is challenged, defines the term "fair market value." Although this case was tried before January 1, 1965, the effective date for the mandatory use of the Missouri Approved Jury Instructions (M.A.I.), Instruction 5 is identical, except for one word, to M.A.I. No. 15.01, and was as follows:

"The term 'fair market value' means the price which the property in ques-

tion would bring when offered for sale by one willing but not obliged to sell it, and is bought by one willing or desirous to purchase it but who is not compelled to do so.

"In determining fair market value you should take into consideration all the uses to which the property may best be applied or for which it is best adapted, under existing conditions and under conditions to be reasonably expected in the immediate future."

In M.A.I. No. 15.01 the next to the last word is "near" instead of "immediate." At the time Instruction 5 was given, the word "immediate" appeared in the then proposed M.A.I. No. 15.01, but was later changed to "near" prior to January 1, 1965. Appellant makes no point concerning the use of "immediate" instead of "near."

Related to the alleged error in giving Instruction 5 is the alleged error in refusing appellant's requested Instruction A, and although somewhat lengthy, we shall set it out, and for future reference we have added brackets around certain parts of it.

"The Court instructs the jury that plaintiff, the State Highway Commission of the State of Missouri, is seeking, by this suit to condemn for public use as a right-of-way a total of 4.56 acres of land described in the evidence and bounded on the south by Forder Road, on the west by Union Road, on the north by the remaining property of Shirley Rawlinson and on the east by the property of May Stores Shopping Center, Inc. and the property formerly owned by Frank C. Wallis, being the property of Shirley Rowlinson. Your verdict therefore must be for Shirley Rowlinson. In assessing the just compensation due her you must allow her the amount which you find and believe from the evidence to be the fair market value as of November 16, 1961 of such 4.56 acres.

["The term 'fair market value' means the price which her property would

bring when offered for sale by one willing but not obliged to sell it, and is bought by one willing or desirous to purchase it but is not compelled to do so.] Fair market value does not mean the price it would bring where the party selling is forced to sell, or where it is sold for other considerations in addition to the money paid, but rather what the land would fairly bring in the hands of a prudent seller at liberty to fix the time at which she would sell and the conditions under which she would sell. The question is, if the defendant Shirley Rowlinson wanted to sell her property, what could have been obtained for it upon the market from parties who wanted to buy it on November 16, 1961, and would give her its full value for its highest and best use?

["In determining its fair market value, the jury should take into consideration] its location, the uses for which it is suitable at such location, including [all the uses to which it may best be applied or for which it is best adapted,] having regard not alone for the existing business wants of the community, but also such uses as may [be reasonably expected in the immediate future,] and comparing with the sales and prices most recently obtained at or about the time of the taking for comparable lands with the same facilities in the area. In determining the uses and purposes for which Shirley Rowlinson's land *were* suitable or adaptable, the jury is not confined to the use made of the land at the time it was taken."

Appellant's contentions as to Instruction 5 are that (a) it "was not a complete statement of the law and omitted many necessary elements about which defendant was entitled to have the jury instructed;" (b) it failed to instruct the jury to consider the comparable sales of land in the immediate vicinity and near the time of the taking; (c) it failed to instruct the

jury to determine the probable best use of said property in the reasonably foreseeable future; and (d) it "was not a proper definition of 'fair market value' under the evidence adduced in said cause." Appellant's contentions as to the refusal of Instruction A are that (a) it was "a proper instruction which had been previously approved by the Supreme Court;" (b) it "properly put before the jury the proper elements to consider relative to uses to which the property would be best adapted considering the existing business wants of the community and such uses as might be reasonably expected in the immediate future;" (c) it properly instructed the jury that it was not confined to the use being made at the time it was taken; and (d) it properly instructed the jury to take into consideration the most recent comparable sales of land in the immediate area.

Prior to the mandatory use of M.A.I. the use of an instruction in the language of Instruction A has been held not to be improper. City of St. Louis v. Vasquez, Mo., 341 S.W.2d 839; State of Missouri ex rel. the Board of Regents for the Central Missouri State College v. Moriarty, Mo.App., 361 S.W.2d 133. We are of the opinion that it would not have been reversible error for the trial court to have given Instruction A in this case. The question, however, is whether it was prejudicially erroneous for the trial court to refuse to give it and to give Instruction 5.

It is interesting to note that the result of appellant's contention is that she is entitled to a new trial because Instruction 5 was given instead of Instruction A, but on a new trial, if granted, the trial court would then be required not to give Instruction A and to give M.A.I. 15.01, which is identical to Instruction 5 except for one word about which no complaint is now made.

■ We shall examine first Instruction A. In the first paragraph it improperly told the jury to determine the fair market value of the 4.56 acres actually taken.

This was a "partial taking" case, and the proper procedure was for the jury to use the "before and after" rule as set out in Instruction 4. Other than advising the jury of the date on which the fair market value should be determined, and Instruction 4 did this, the remainder of the first paragraph of Instruction A was unnecessary, and in fact bordered on a comment on the evidence and on being argumentative.

The first sentence of the second paragraph of Instruction A, which we have bracketed, is almost identical (the difference not being material) to the first sentence of Instruction 5, and it advised the jury the meaning of the term "fair market value." There then follows in Instruction A a discussion of what the term does not mean, argumentative in nature, and then the instruction poses a question to the jury rather than declaring the law. In addition, in this latter part of the second paragraph reference is made to "her property," which could mean the seven-acre tract or perhaps the 4.56 acres referred to in the first paragraph, but in either event it ignored the "before and after" test.

In the third paragraph of Instruction A, the portions which we have bracketed contain almost the identical language (the difference being immaterial) of the second paragraph of Instruction 5. The remaining portions of the third paragraph constitute an explanation of what was meant by the bracketed language, and is in nature argumentative. Appellant was not prejudiced by the failure of the trial court to give Instruction A in the language submitted.

■ We shall now examine the contentions as to Instruction 5. Appellant contends that it (a) did not instruct the jury to consider comparable sales of land in the immediate vicinity and near the time of the taking, and (b) failed to instruct the jury to determine the best probable use of said property in the reasonably

foreseeable future. Reliance is placed primarily on the Vasquez case, but as to the inclusion of these two items in the instructions in that case, this court said that they contained "matter that is argumentative, in a sense" and that they recited "certain evidential elements which would be better left to argument." It was then added that "we are not willing to reverse the judgment for this reason, having in mind previously approved instructions similar in form and content." This court has been reluctant to reverse a case because of the inclusion of argumentative material of this nature in a damage instruction in a condemnation case even though critical of the practice, State ex rel. State Highway Commission v. Volz Concrete Materials Company, Mo., 330 S.W.2d 870, 875, but this does not mean that a trial judge who departs from the customary but criticized practice has committed prejudicial error. Instruction 5, as worded, specifically authorizes and directs the jury to determine the fair market value, and in making that determination to consider all the uses to which the property may best be applied or for which it is adapted under existing conditions and those reasonably expected in the immediate future. Such matters as set out above under (a) and (b) are proper for oral argument to the jury by counsel, but they should not be argued to the jury by way of court given instructions.

■ Although not specifically mentioned in the point, it appears from the argument that the principal objection to Instruction 5 is that it did not specifically tell the jury that it could consider the probability of rezoning. We note that appellant asserts that Instruction A submitted "all of the issues which were proper for submission to this jury," but the reasonable probability of rezoning was not therein specifically mentioned. It did contain language that in determining fair market value the jury should consider "the uses for which it is suitable at such location * * * [and] also such uses as may reasonably be expected in the immediate fu-

ture," and that in determining the uses and purposes for which the land was adaptable "the jury is not confined to the use made of the land at the time it was taken." This language, appellant asserts, authorized the jury to take into consideration a reasonable probability of rezoning. However, in Instruction 5 the jury was told that in determining fair market value it should consider "the uses to which the property may best be applied or for which it is best adapted, under existing conditions and under conditions to be reasonably expected in the immediate future." We are of the opinion that the jury was authorized to consider the probability of rezoning under either instruction.

■ We conclude that although Instruction 5 was much shorter than instructions on this subject in previously considered cases, it contained all the factors which appellant was entitled to have specifically mentioned in an instruction. Therefore, no prejudicial error resulted from the giving of this instruction.

Appellant asserts prejudicial error resulted in permitting certain testimony and in refusing other testimony. Certain background information is essential. Lindbergh Boulevard, a major trafficway at this locality, runs generally east and west. Parallel to it, and to the south is Forder Lane. Lemay Ferry Road runs generally north and south and intersects Lindbergh Boulevard. Parallel to it, or substantially so, and west is a platted but unimproved street referred to as Union Road. These four streets form a rectangle slightly longer north and south. Appellant's seven-acre tract lies in the southwest corner of the rectangle. Walter Scott acquired the property, placing title in the name of a "strawparty," in December 1960, ten and one-half months before the date of taking for a total consideration of $22,000. Mr. Scott, a real estate broker, testified that in his opinion the value of the seven acres of land on November 16, 1961, the date of taking, was $300,000, and that after the taking the remaining 2.44 acres had no value whatever. Prior to the date of his purchase of the seven-acre tract, Mr. Scott knew of a proposed development of a shopping center in the northern portion of the rectangle by the May Department Stores which operates Famous-Barr Company, and by which name we shall subsequently refer to the company.

Appellant asserts that the trial court erroneously permitted the testimony of Joseph W. Cloud concerning the purchase of land by him in 1955 because (a) it "was not the most recent sale of that tract of land prior to the date of taking and * * * said transaction was too remote to be any evidence of the land value at the time of taking," and (b) all of the expert witnesses testified that there had been a substantial increase in the value of the land from 1955 to 1961.

Joseph W. Cloud was a witness called by appellant. On direct examination he testified that on May 17, 1961 he sold 4.4 acres of land zoned for commercial use and fronting on Lemay Ferry Road for $135,000. On cross-examination he testified that appellant's property was not comparable to his property because of its location. It was further developed on cross-examination that Cloud had owned 13 acres of land directly across Forder Road from appellant's property. It appears that he conveyed this property to the State of Missouri for the same highway as that for which appellant's property was condemned. No attempt was made to have Cloud testify as to the price received from the State. However, over the objection of appellant he was permitted to testify that he purchased the property on May 12, 1955 for a total consideration of $14,500.

■ We are not aware of any rule that only evidence of the "most recent sale" of land is admissible, and appellant has cited no case so holding. When evidence of a sale is otherwise competent, it

is immaterial whether it is the most recent sale.

◼ The general rule is that evidence of the sale price of property similarly located to that involved, and made in the neighborhood reasonably near the time of taking, is admissible to aid the triers of fact in determining the compensation to which the owner is entitled for the taking of the property. In re Armory Site in Kansas City, Mo., 282 S.W. 2d 464, 473; Kansas City & Grandview Railway Co. v. Haake, 331 Mo. 429, 53 S.W.2d 891, 84 A.L.R. 1477. "The importance of evidence of the sale price of other land depends upon the degree of nearness of the sale in point of time and the proximity of the property, of the similarity in location, and in the use to which the property may be adaptable." In re Armory Site in Kansas City, supra. Unless the distance in location, or the difference in time of sale from the time of taking, or the lack of similarity be so great as to make the evidence, as a matter of law, not material and relevant, such differences go to the weight of the evidence rather than to its admissibility. United States v. Becktold Co., 8 Cir., 129 F.2d 473, 479; 30 C.J.S. Eminent Domain § 430. As stated in the Armory Site case, "In determining the admissibility of evidence of this nature there necessarily must be considerable discretion on the part of the trial judge." Appellant offered evidence by this witness of the sale price of 4.4 acres of land when the sale was near in time to the taking of appellant's land, but the land was not entirely comparable because of location. The condemnor then offered evidence by the same witness of the sale of land substantially comparable on the basis of location, but the sale was removed in point of time from the taking by about five years. Each party had a full opportunity to show why the evidence had a limited bearing on the issue of fair market value. See 30 C.J.S. Eminent Domain § 430, p. 566. Under these circumstances we cannot hold that the trial court

abused its discretion in admitting the testimony.

Appellant also contends that the trial court erred in refusing to strike the testimony of witnesses Godwin, Bentley and Schneider, all expert witnesses called by respondent, because (a) they "failed to state the factors and basis on which they based their appraisals," and (b) they did not testify that they had based their opinion on any comparable sales.

◼ Respondent is correct when it asserts that appellant made no motion to strike the testimony of witness Schneider. We need not consider appellant's contention now made concerning his testimony.

Mr. Godwin and Mr. Bentley were realtors and real estate appraisers who unquestionably were qualified as expert witnesses on value of real estate in the vicinity of appellant's land. Mr. Godwin testified that he examined appellant's property in December of 1959 and again in 1961, and that in his opinion the fair market value immediately prior to November 16, 1961, was $21,000. He was then asked to relate "what factors you considered and how you arrived at the figure of $21,000." He stated that the "basis of the value was three thousand dollars an acre," which was an increase over an estimate he had made in 1959, and that "probably the most important [factor] was * * * that the Scott property actually sold for twenty-one or twenty-two thousand dollars;" that there was now one ownership instead of two; that it was a "larger tract and more readily developable;" that he considered the portion of the seven-acre tract not taken to be of no value because it was landlocked; that appellant's land was zoned residential and that he had acquainted himself with the zoning of other tracts in the neighborhood and the possibility of rezoning appellant's land; and that he considered the possible use of appellant's land "by the shopping center." On cross-examination he stated that in his

opinion the property to the west and south of the shopping center (which included appellant's property) did not change in value by reason of the shopping center as much as the property on Lemay Ferry Road and Lindbergh Boulevard because it still has "a ten-foot wide road, they don't have any water, they still don't have any sewers, they don't have any gas, they don't have the utilities and the access that the property really needs to be developed and to accept an increase in value." While he stated that he arrived at his valuation "by comparable sales," he also stated he did not consider the sale of those tracts testified to by appellant's witnesses because they were bought for "special reasons" and "those reasons" would exclude the use of appellant's land.

Mr. Bentley testified that he had examined appellant's property, and that in his opinion the fair market value at the time of taking was $16,000, and that the land not taken had a value after the taking of $1,250. He arrived at this latter figure on the basis that the remaining parcel was landlocked and would have a minimal value for resale. He was then asked to relate "how you arrived at the $16,000." He stated that the "first thing" he did was to determine "the highest and best use" which in his opinion was residential. He further stated that he was familiar with the rezoning for commercial use of the land acquired by Famous-Barr Company, but that in his opinion that would have no effect on appellant's property because it did not have the requisite attributes for commercial use in that it was remote from any commercial road.

Appellant cross-examined both of these witnesses at length, but did not develop that any improper items of valuation had been considered by either. Appellant then moved to strike the "entire testimony" of Mr. Godwin because "he testified that his valuation is based on the study of comparable sales, and that during direct examination, he testified as to no facts or figures of such comparable sales, * * * [and] he testified on cross-examination that he did not rely on the sales that were in evidence * * *." Appellant moved to strike the testimony of Mr. Bentley because he did not show "what factors he relied upon in making his appraisal."

As an exception to the general rule that a witness may not express an opinion, an expert witness may do so when qualified as such and when the subject matter is not of such common knowledge as to invade the province of the jury. However, the expert witness must base his opinion on facts established by competent evidence. Schears v. Missouri Pacific Railroad Company, Mo., 355 S.W.2d 314; Craddock v. Greenberg Mercantile, Inc., Mo., 297 S.W.2d 541. The question of whether such opinion is based on and supported by sufficient facts in evidence to sustain the same is a question of law. Gaddy v. Skelly Oil Co., 364 Mo. 143, 259 S.W.2d 844, 849; Atcheson v. Braniff International Airways, Mo., 327 S.W.2d 112, 117. The requirement that the opinion be supported on a factual basis may be met either by the witness premising his conclusion on facts within his personal knowledge or observation, or by premising the conclusion on a specified state of facts, assumed to be true, as to which some evidence has been received. 32 C.J.S. Evidence §§ 549 and 550. In this case expert witnesses Godwin and Bentley based their conclusions on value from a personal observation and examination of the land, the description of which was in evidence, its location, its zoning and probability of rezoning, its probable uses, and in the case of Godwin, on the purchase price paid by Scott. It was not necessary as contended by appellant, that they base their estimates on "comparable sales" if there was other factual basis, which there was, and their failure to use "comparable sales" or other factors believed proper by appellant was a matter affecting only the weight to be given their testimony by the

jury. We find no merit to this contention by appellant.

Appellant's first contention concerning the exclusion of evidence is that the court erred in refusing "to admit into evidence an offer of $35,000" made by Famous-Barr Company for the seven-acre tract shortly before the date of taking.

Appellant called as a witness Gregory J. Nooney, Jr., a realtor who testified that during the latter part of 1960 and in 1961 he acted as agent for Famous-Barr Company to acquire property in the vicinity of Lemay Ferry Road and Lindbergh Boulevard for a shopping center. Appellant then offered in evidence copies of a "sales contract" describing the seven-acre tract and listing a purchase price of $35,000, and also a copy of a check in the amount of $2,100 identified as a proposed earnest payment. Each had been signed by Mr. Nooney. Although these documents contained the names of the members of the Bone family, and not that of Walter Scott, and were dated before title was placed in the name of Walter Scott's strawparty, appellant offered to prove by them that they represented an offer to Walter Scott by Mr. Nooney on behalf of Famous-Barr Company to purchase the seven-acre tract for $35,000. Mr. Nooney was permitted to testify that he made an offer to Walter Scott, and that he knew the amount of the offer, but he was not permitted to state the amount.

■ As a general rule proof of an unaccepted offer to purchase real property is not admissible as evidence of value, at least when not testified to by the offerer. School District of Clayton v. Kelsey, 355 Mo. 478, 196 S.W.2d 860; State ex rel. State Highway Commission v. Clevenger, 365 Mo. 970, 291 S.W.2d 57; City of St. Louis v. Gerhart Realty Co., 328 Mo. 103, 40 S.W.2d 661; Missouri Public Service Company v. Hunt, Mo.App., 274 S.W.2d 27. This is by far the majority rule. See Nichols on Eminent Domain § 12.311 [2], and the numerous cases cited in the annotation at 7 A.L.R.2d 781.

Appellant asserts that an exception to the general rule should be made in this case because in School District of Clayton v. Kelsey, supra, this court indicated that the reason for the rule is that the door would be opened to offers made in bad faith, and in this case there obviously existed no collusion or fraud.

■ The possibility of opening the door for proof of fraudulent offers to purchase may be a sufficient reason for the general rule, but it has more compelling reasons. An offer to purchase "is, at most, a species of indirect evidence of the person making such offer as to the value of the land." Nichols on Eminent Domain § 12.311 [2]. Therefore, an offer to purchase is an expression of opinion by the one making the offer of the value of the land for the purpose it was wanted. When the fact that such an offer was made is offered in evidence other than by the testimony of the offerer it constitutes a hearsay expression of value with no opportunity to cross-examine the offerer, the value expressed in the offer may not be the fair market value the jury is to determine, the offerer may not be qualified to express an opinion on the fair market value, and the offerer may have wanted the land for a particular purpose disconnected with its value. See State Highway Commission v. Triangle Development Co., Wyo., 369 P.2d 864, and Brock v. Harlan County, 297 Ky. 113, 179 S.W.2d 202. In this case, however, Mr. Nooney was the one who made the offer to purchase the land, he qualified as an expert witness on land values generally, and he was present on the witness stand subject to cross-examination as to the factors he took into consideration in arriving at the value expressed in the offer. Whether an expert witness, who has expressed his opinion as to the fair market value of land, may then fortify that opinion by testifying that he made an offer to purchase for that amount is an issue we are not called upon to decide in this case. Mr. Nooney testified that on behalf of Famous-Barr Company he had made an offer to Mr. Scott to purchase the land and that he

had "an opinion of what we were willing to pay for it, what it was worth to us," but he declined to express an opinion as to the fair market value of the land because, as he said, he had "no opinion of value other than to anybody but our client who we were assembling the property for," and because he did not "know enough about that property except as it relates to the whole to give you a qualified answer on that." When Mr. Nooney was not qualified to express from the witness stand an opinion as to the fair market value of the land, the trial court did not err in refusing to admit into evidence his extra-judicial expression of opinion of value in the form of an offer to purchase.

Appellant next contends that the trial court erred in refusing to admit into evidence three exhibits which she contends constituted evidence of the probability of rezoning her land in the reasonably foreseeable future. She cites State ex. rel. State Highway Commission v. Williams, Mo., 289 S.W.2d 64 and City of St. Louis v. Vasquez, Mo., 341 S.W.2d 839. These two cases hold that such evidence is proper, and the trial court did permit other evidence tending to show such probability. The issue here is whether the specific exhibits offered were competent evidence and relevant to that issue.

Exhibit 2 was a plat prepared by the St. Louis County Planning Commission for the Land Use Plan, entitled Study Area 17, Land Use Plan Diagram. The legend shows various uses for the land, but the area where appellant's land is located is left blank, except for some circles designating a proposed expressway. The legend designates the area of appellant's land as "Rural (land not needed for urban uses)." Mr. Alfred Kahn, Assistant Planning Director of St. Louis County, stated that the location of the circles showing the location of the highway was "an approximation" but that it subsequently turned out to be substantially correct, and that the area of appellant's land "does not bear a specific designation." Mr. Kahn then testified "from his personal

knowledge" that "to the northeast of the intersection of the circumferential and Interstate 55 * * * the recommended land use was regional business, regional commercial." This would include the portion of the seven-acre tract not taken for highway purposes. Subsequently Mr. Kahn stated that the "Land Use Plan makes recommendations of a general nature as to how an area should be developed, and does not say what specific zoning should be on the property." When Exhibit 2 was offered in evidence respondent objected because it was not definite enough to be of any probative value. The trial court sustained the objection and commented that it would not add anything to the oral testimony of the witness.

Exhibit 2 is indefinite as to whether it includes any of appellant's land in the area proposed to be developed as regional commercial. Whether it did depended upon the "personal knowledge" of Mr. Kahn, and testimony of his personal knowledge was admitted. We see no reason why the exhibit should not have been admitted for what "it is worth," as it is sometimes said. But, the overall appearance is that the exhibit would have been detrimental to appellant. However, there is another matter for consideration. Such proposals for the development of the land by the Planning Commission obviously were based on the location of the proposed highway, and ordinarily a landowner is not entitled to show the value of his land resulting from the presence of the project to be constructed thereon for public use. While, we doubt that the admission in evidence would not have been improper, we do not see how appellant was prejudiced by the court's refusal to admit it. As the trial court said, it did not add anything.

In rebuttal appellant called as a witness Kenneth Lange, Zoning Administrator of the St. Louis County Planning Commission. He identified two tracts of land lying west of Union Road which were northerly of appellant's land and west of the Famous-

Barr Company shopping center. As to each tract he testified without objection that an application for rezoning was filed, and that the Planning Commission had on February 19 and July 23, 1963 recommended a change in the zoning from "C" single family district to "I" business district. He further stated that the County Council, as to each tract, had passed an ordinance rezoning the property as recommended by the Planning Commission. He was then asked to relate the action the Planning Commission takes when it is making its recommendation to the County Council. After some discussion and in an offer of proof appellant offered in evidence Exhibits 11 and 13 which were refused by the trial court. These exhibits were copies of letters from the Planning Commission to the County Council recommending the change in the zoning of the two parcels of land. Appellant asserted that these letters were part of the business records of the Planning Commission, and she contended that she was entitled to show more than just the approval of the proposed changes, but could show the "reasons for having made its recommendations." Respondent objected because the reasons constituted hearsay.

■ "Although the purpose of The Uniform Business Records as Evidence Law [§§ 490.660–490.690, RSMo 1959, V.A.M.S.] is to enlarge the operation of the common law rule providing for the admission of business records as an exception to the hearsay rule, the Law does not make relevant that which is not otherwise relevant, nor make all business and professional records competent evidence regardless of by whom, in what manner, or for what purpose they were complied or offered, and when the business record is not of the character comprehended by the Uniform Law, it is relegated to the status of hearsay and as such is not admissible in evidence." Kitchen v. Wilson, Mo., 335 S.W.2d 38, 43. The fact that the two properties were rezoned was relevant to the issue of whether there was a reasonable probability of a change in the zoning of appellant's property, and the

fact that the Planning Commission recommended the change in zoning was also relevant as one of the essential steps in the rezoning process. However, the opinions or reasons of the commission or its conclusions were not relevant to the pending issue, and the Uniform Act did not make them admissible in evidence. See Mo.Bar. CLE, Sources of Proof, Chapter 4; Allen v. St. Louis Public Service Company, 365 Mo. 677, 285 S.W.2d 663, 666–667, 55 A.L.R. 2d 1022; Terrell v. Missouri-Kansas-Texas Railroad Company, Mo., 327 S.W.2d 230. Portions of the letters were admissible, but appellant's offer was that they be admitted in their entirety. The trial court did not err in refusing to do so.

■ Without setting it out, appellant objects to Instruction 3 because "by inserting the word 'damages' therein, instead of 'just compensation,' said instruction misled the jury to believing that they could not find for the defendant for more than his purchase price unless they found that he had been damaged thereby." We are concerned only with the first paragraph of the instruction which was as follows: "The Court instructs you that the burden of proof is on the Defendant, to establish by the preponderance or greater weight of the credible evidence the damages by reason of the Plaintiff's appropriation as described in the evidence." Appellant relies on KAMO Electric Cooperative, Inc. v. Baker, 365 Mo. 814, 287 S.W.2d 858. That case pertained to condemnation to obtain a right of way easement for an electric power line. An instruction had improperly injected the issue of damages for future use of the right of way, and in another instruction the jury was told that it should assess the "just compensation *and* damages." It was held that the terms "just compensation" and "damages" in condemnation cases "are used interchangeably and in a case of partial taking * * * each term when used separately, refers to what the landowner is entitled to receive by reason of the reduction in the fair market value of the whole tract as the result of the appropriation of

a part." It was then held that by the use in that case of the terms in the same instruction in the conjunctive the jury was told in effect that it should award "just compensation" for the appropriation *and* also award "damages" for those subsequent uses by the condemnor. In this case the terms were not used in the conjunctive, there was no issue concerning damages resulting from future uses, and the term "damages" was expressly limited to those resulting from "plaintiff's appropriation." We note as a matter of interest that in Instruction B, requested by appellant but refused by the trial court, appellant asked that the jury be instructed that "In assessing damages sustained by the defendant by the taking of her land, * * *." We mention this to show that appellant was not confused by the use of the term "damages," and we do not see how the jury possibly could have been.

The remaining contention is that the trial court erred in overruling appellant's motion for new trial because "the verdict of the jury was grossly inadequate and was against the greater weight of the evidence" in that the verdict was the result of "passion and prejudice" against appellant and is "so unconscionable" as to deny appellant just compensation for the taking of her property.

■ In support of the above contention, appellant argues that the jury was improperly instructed, but we have determined that it was not, and she also asserts that the jury was "biased and prejudiced against defendant in this case, at least the nominal defendant, Mr. Walter Scott." Appellant then reviews the evidence, and we shall comment briefly on that review. She points out that a public announcement of the intention of Famous-Barr Company to build a shopping center was made in March 1961, that the date of taking of her property was November 16, 1961, and that all witnesses including plaintiff's expert witnesses testified that the proposed shopping center would have a "meritorious effect" on property values. We interpose here that plaintiff's witnesses did recognize the effect of the shopping center on property values, but they testified that in their opinion appellant's property would not be affected to any substantial degree because of its location and other physical features. We also mention that the evidence also shows that Walter Scott knew of the proposed shopping center at the time he bought the seven-acre tract which was prior to the public announcement, and that, he, as an experienced realtor knowing of the "meritorious effect" of the shopping center on property values, paid $22,000 for it, which was the amount the jury awarded him for the taking of 4.56 acres. Appellant next argues that the $22,000 award was only 63% of an offer he received from Famous-Barr Company. However, we previously have held that the amount of this offer was properly not permitted in evidence, and for that reason it cannot now be used by appellant in support of her contention that the award was inadequate. Appellant also argues that in view of the sales of other property in the area and the amount of the jury award, the jury "must have failed to understand its right to assess a valuation on this property for commercial usages," and she argues that the evidence concerning what respondent contended was a comparable sale should have been excluded. However, no point appears in appellant's brief concerning that evidence, and the jury was entitled to take it into consideration just as it was entitled to consider the evidence concerning what appellant contended were comparable sales. We cannot assume that the jury failed to understand what it was entitled to take into consideration, and strictly speaking, it was not authorized to determine its valuation "for commercial usages." The property at the time of taking was zoned residential. The jury was to make its determination under the existing restrictions, with consideration being given to the impact upon the fair market value of the likelihood of the zoning change. Union Electric Company v. Saale, Mo., 377 S.W.2d 427, 429.

■ Appellant also asserts "as to bias and prejudice of this jury against the

defendant" that plaintiff elicited from Walter Scott "that he had made a profit of approximately $30,000 on property known as the Mueller tract." On direct examination Mr. Scott testified that on December 29, 1960 he sold a nearby tract of land to Famous-Barr Company for $80,000. This was shown on the theory that it was a comparable sale. On cross-examination, he testified that on the same day he sold the property to Famous-Barr Company he had purchased it for a total sum of $50,000. Apellant now says that the testimony of his purchase "was not a comparable in that it it was not the last sale of the property prior to the day of the taking." No objection was made to the testimony on that ground, it is not assigned as error in a point in the brief, and we know of no such exclusionary rule. Evidence properly before a jury cannot form the basis of establishing bias or prejudice of the jury.

 There was disparity between the estimates of the expert witnesses, but that is not a justifiable basis for an appellate court to disturb the verdict in a condemnation case. Missouri Public Service Company v. Hunt, Mo.App., 274 S.W.2d 27, 31. There was substantial evidence from plaintiff's expert witnesses that the total of appellant's damages resulting from the appropriation was less than the award. In addition, the testimony of Walter Scott that he paid $22,000 for the seven acres at a time he knew that Famous-Barr Company was going to build a shopping center, and eleven months before the date of taking, was evidence supporting the award of $22,000 for the appropriation of approximately two-thirds of the tract of land. The trial court is vested with wide discretion in ordering a new trial on the ground of either excessiveness or inadequacy of the verdict, and its action will not be disturbed if it is reasonably supported by substantial evidence. See Combs v. Combs, Mo., 295 S.W.2d 78, and the cases there cited. We conclude that the verdict in this case was supported by substantial evidence, that appellant has not demonstrated bias or prejudice on the part

of the jury, and that there is no basis for this court to rule that the trial court abused its discretion in the matter.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.