PHILLIPS PIPE LINE COMPANY, A Corporation, Plaintiff–Appellant,

v.

Raymond ASHLEY et al., Exceptions of: Victor J. Voss and Dorothy Voss, Defendants–Respondents.

No. 39915.

Missouri Court of Appeals, Eastern District, Division Four.

July 22, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 12, 1980.

Lashly, Caruthers, Thies, Rava & Hamel, Albert H. Hamel, John A. Turcotte, Jr., Richard D. Schreiber, Clayton, and Douglas L. Taylor, Phillips Petroleum Co., Bartlesville, Okl., for plaintiff–appellant.

Jenny, Cole & Eckelkamp, L. B. Eckelkamp, Jr., William W. Eckelkamp, Gael D. Wood, Washington, for defendants–respondents.

SATZ, Judge.

By an order of condemnation in May, 1972, plaintiff Phillips Pipeline Co. (Phillips) acquired a forty foot wide right–of–way and easement across land owned by defendants Victor and Dorthy Voss. Phillips obtained the right to construct and maintain an underground pipeline across defendants' land for the transportation of petroleum products, which could include gasoline, butane, propane, butane–propane mixtures and other petroleum products and mixtures. An award was made by the condemnation commissioners. Phillips filed exceptions to this award. The exceptions were tried before a jury and the jury awarded defendants $16,000.00 as damages. Phillips appeals. We affirm.

Under the easement rights acquired by the present condemnation, Phillips constructed an underground pipeline (1972 pipeline) through defendants' property. Previously, Phillips had acquired a pipeline easement across defendants' property from defendants' predecessors in title. This earlier easement lies about twelve feet north of the 1972 pipeline and overlaps the 1972 easement. In 1930, under its prior easement rights, Phillips constructed a pipeline (1930 pipeline), and, in December 1970, this pipeline exploded in the Port Hudson area of Missouri, some seven miles from defendants' property. The 1930 pipeline was taken out of service after completion of the 1972 pipeline.

During a pre–trial discussion, defendants' counsel informed the court that he would be offering evidence showing the 1970 explosion of the 1930 pipeline caused potential buyers to fear Phillips' 1972 pipeline and this fear, among other factors, depreciated the value of defendants' property. In addition, defendants' counsel stated that he would be offering newspaper clippings describing the explosion for the purpose of showing the extent of the dissemination of the news of the explosion but not for the purpose of showing the explosion did in fact occur. Counsel for Phillips stated he would object to any testimony about the 1970 explosion because this evidence was "too remote in time and too speculative and it would be very prejudicial to the rights" of Phillips. He also stated he would object to the introduction of the newspaper clippings because they would be hearsay evidence of the explosion. By agreement, Phillips' objections were to be continuing objections and Phillips would not be and was not re-

quired to make these objections during the course of the trial.

At trial, defendants' principal witness was a Mr. Garland Noonan, a real estate broker and appraiser for 25 years. Noonan's appraisal was that the difference in fair market value of defendants' property immediately before and immediately after the taking was $21,685.00. He arrived at this conclusion by reviewing sales of comparable properties, and, over Phillips' objections, he was permitted to state the price paid for each of these pieces of property. Noonan also testified that the explosion and its attendant publicity created a fear which resulted in very few sales being made in Franklin County of property encumbered with pipelines, and his evaluation of defendants' property was adjusted to reflect the reduction in value due to the installation of the 1972 pipeline. Another witness for defendants, Mr. Burt Barklage, a real estate developer and builder, also testified that potential buyers of property in Franklin County would be less likely to purchase property that was encumbered by pipelines because of their fear of explosion or future explosions. Copies of clippings from several newspapers covering the 1970 explosion were admitted into evidence for the limited purpose of establishing the fact that such articles concerning the explosions in fact existed and not to prove the accuracy of their contents.

Phillips' own expert, Mr. Herman Bailey, testified that, as a direct result of the 1970 explosion, a "certain percent" of people in Franklin County believe that property is worth less if it has a pipeline on it, reducing its market value. Another appraiser called by Phillips, Mr. John Doerr, also testified that, in determining the value of defendants' property, he adjusted his figures in order to reflect a "concern about the value of property compared to the value of it before the explosion".

Defendant Victor Voss testified on his own behalf and, over Phillips' objection, he testified about specific items of damage resulting from the construction of the pipeline. These itemized damages were: heavy equipment used during construction compacted the soil and caused soil erosion resulting in loss of top soil and damages of $3,000.00; confinement of his cows for 4½ months, causing damages from loss of milk production and for feeding and bedding the cows in the amount of $2,700.00; loss of some alfalfa hay pasture, causing estimated damages of $1,000.00; a private road had to be "bladed" and covered with a load of rock, which cost a total of $90.00.

Phillips first contends that defendants failed to lay a proper foundation for the admission of evidence of the 1970 explosion. To understand Phillips' specific arguments in support of this contention, we set out the relevant principles of law not in dispute.

■ Where, as here, a partial taking is effected by condemnation, the general rule is that any element of damage which results in a diminution in the fair market value of the remainder area is a fact which must be considered. *State v. Galeener*, 402 S.W.2d 336, 340 (Mo.1966); MAI 9.02. The fair market value is determined by the price the remainder would bring "when offered for sale by one willing but not obliged to sell it, and is bought by one willing or desirous to purchase it but who is not compelled to do so". MAI 16.02. Logically, then, a condemnee should recover for a diminution in value resulting from any factor a willing purchaser would consider detrimental to the remaining property, if the detriment were a direct result of the taking. However, in practice, our courts have qualified this general doctrine of damages, and not every factor which may possibly have an effect upon market value is entitled to consideration. Thus, although a partial taking may entail risks in the use of the remainder area, the risks must be shown to be reasonable probabilities and not imaginary possibilities before they can be considered as proper elements in computing the diminution in value of the remainder area. *Kamo Electric Cooperative, Inc., v. Cushard*, 416 S.W.2d 646, 656 (Mo.App.1967); *Kamo Electric Cooperative v. Dicke*, 296 S.W.2d 905, 909 (Mo.App.1956). These risks are properly considered "not upon the theo-

ry that a recovery is being thereby allowed for speculative risks and contingencies which may never happen, but instead upon the theory that such matters in the nature of special damages affect the present market value of the land in the light of the use to which it may be put". *Missouri Power & Light Co. v. Creed*, 32 S.W.2d 783, 787 (Mo. App.1930). Thus, in the present case, an element of damage would be the risk of the 1972 pipeline exploding, if this risk were reasonably probable and if it depreciated the value of defendants' property. *See Missouri Power & Light Co. v. Creed, supra.* Since it is the fear caused by the risk which actually depreciates the value of the remaining tract, rather than the risk itself, a parallel view, or, perhaps, the same view stated otherwise, permits the fear caused by the risk to be considered as an element of damages, if there is a basis in reason or experience for the fear and if the fear depreciates the value of the remaining tract. *See Heddin v. Delhi Gas Pipeline Co.*, 522 S.W.2d 886, 888 (Tex.1975); *Gulledge v. Texas Gas Transmission Corp.*, 256 S.W.2d 349, 353 (Ky.1952); *Nichols, Eminent Domain* § 14.241(1) (3rd ed. 1969). Obviously, first the fear must be shown to exist in the minds of potential buyers and sellers and "(t)o establish that there is a basis in reason or experience for the fear, it is incumbent upon the landowners to show either an *actual danger* forming the basis of such fear or that fear is reasonable, whether or not based upon actual experience" (emphasis theirs). *Heddin v. Delhi Gas Pipeline Co., supra* at 888.

■ With these principles as background, Phillips' first two attacks against the admissibility of evidence of the 1970 explosion are really twin aspects of the same basic attack that defendants failed to lay a proper foundation for the admission of this evidence. Phillips argues that defendants failed to show any similarity between the 1930 pipeline which exploded in 1970 and the 1972 pipeline in question and, therefore, Phillips reasons, defendants failed to lay a proper foundation for the consideration of either the actual danger of a future explosion or the existence of fear of a future

explosion as elements of damage. Phillips' general objection that the explosion was "too remote in time and too speculative" failed to present to the trial court the specific and now explicitly stated objection that failure to show similarity between the pipelines resulted in a fatally defective foundation for admission of evidence of the 1970 explosion. *Halford v. Yandell*, 558 S.W.2d 400, 404 (Mo.App.1977); *Lawson v. Cooper*, 475 S.W.2d 442, 445–447 (Mo.App. 1972). On appeal, Phillips may not argue a new objection to the admission of evidence which differs from the objections raised in the trial court. *Hermann v. St. Louis Public Service Co.*, 345 S.W.2d 399, 405–406 (Mo.App.1961).

■ Phillips also argues that defendants failed to show that fear existed at the time of the taking in question and, further, even if this fear were shown, defendants additionally failed to show the fear entered into the calculations of a substantial number of buyers and sellers, depreciating defendants' property. Since these attacks are addressed primarily to the question of the existence and the effect of fear at the time of the taking, Phillips' objection that the explosion was "too remote in time" adequately preserved these attacks. Moreover, at trial, Phillips sought to strike the testimony of defendants' expert Barklage on these specific grounds. We disagree, however, with Phillips' conclusion that defendants' foundation was defective. As noted, defendants' expert Noonan testified that the difference in fair market value of defendants' property immediately before and immediately after the taking was $21,658.00. He explained, both on direct and cross–examination, that this figure was reached by factoring in ten percent depreciation due to fear of the present taking. He had personal knowledge that people in the market area feared pipelines and this fear affected the fair market value of defendants' property by depreciating its value when the present taking occurred. Noonan referred to this fear of pipeline explosions as "the theory of a buying public" and stated that as a result of this fear very few sales were

being made in Franklin County of property encumbered with pipelines. This testimony sufficiently established the facts necessary to the admission of evidence of the 1970 explosion. Of course, Phillips had the right to challenge any weaknesses in the testimony during its cross–examination of this witness. *See Pettus v. Casey*, 358 S.W.2d 41, 44 (Mo.1962).

Furthermore, even though Phillips' experts Doerr and Bailey disagreed with defendants' experts about the extent and effect of the fear caused by the 1970 explosion, both Doerr and Bailey acknowledged that the 1970 explosion caused a concern in Franklin County which depreciated the market value of property with a pipeline on it and Doerr factored this concern into his computation of the depreciation caused by the present taking. In light of this evidence of Phillips, it is incongruous for Phillips now to argue that fear did not exist at the time of the present taking and that if the fear did exist, it did not have a basis in reason or experience and was not a proper factor in computing the depreciation of defendants' property. The issues of the existence of fear at the time of the taking and that it had an effect on the value of defendants' property were, in effect, rendered moot by Phillips' own evidence.

■ Phillips also argues that the newspaper articles depicting the 1970 explosion were improperly admitted because they were hearsay and irrelevant. These articles were not introduced to prove the fact of the 1970 explosion and, thus, they were not hearsay since their purpose was not to prove the truth of their contents. Rather, they were introduced to show the dissemination of the news of the explosion, and, as such they were relevant to show the existence as well as the reasonableness of the fear in the mind of possible purchasers in Franklin County.[1]

■ Phillips next argues that Noonan's testimony as to the specific prices paid for comparable properties in Franklin County was also impermissible hearsay. The identical argument was expressly rejected in *State ex rel. State Hwy. Com'n v. Jasper*, 544 S.W.2d 554, 556 (Mo. banc 1976) where the Supreme Court held that hearsay testimony of an expert witness as to sale prices of comparable properties was admissible, if the specific prices were properly identified by the witness as one of the factors upon which he based his opinion of value. In the present case, Mr. Noonan so identified the prices paid for comparable properties and, thus, this testimony was properly admitted under the mandate of the *Jasper* case.

Phillips next contends that it was improperly prohibited from rebutting defendants' evidence showing the impact of fear of a future pipeline explosion. More specifically, Phillips argues the trial court erred (1) in refusing to permit Phillips to introduce evidence of comparable sales of properties in Franklin County encumbered with other pipeline easements; (2) in refusing to permit Phillips to introduce evidence of residential and commercial development of land in St. Louis County around the same pipeline easements that cross defendants' property; and (3) in refusing to permit cross–examination of Noonan about his experience as an appraiser of St. Louis and St. Louis County properties.

■ The first of these complaints questions the trial judge's determination that proffered evidence of a comparable sale was not relevant. Generally, the sale price of property similar to that taken in condemnation and made reasonably near the time of taking is admissible to aid the fact finder in determining the compensation to which the owner is entitled. *In re Armory Site in Kansas City*, 282 S.W.2d 464, 473 (Mo.1955). However, the determination by the trial judge whether a sale of property meets these criteria and, therefore, whether the sale is relevant *State ex rel. State Hwy. Com'n v. Koberna*, 396 S.W.2d 654, 662 (Mo. 1965) or irrelevant, *State ex rel. State*

---

1. On appeal, Phillips does not assert the defendants failed to show the extent of the circulation of these newspapers.

*Highway Com'n of Mo. v. Kimmell*, 435 S.W.2d 354, 358 (Mo.1968) is an exercise of discretion which will not be disturbed unless abused. *State ex rel. State Hwy. Com'n v. Koberna, supra; In re Armory Site in Kansas City, supra.*[2]

The determination of the trial judge attacked by Phillips concerns a tract of land, called the "Negler" tract, which had two pipelines crossing it and which was initially referred to by Phillips' expert Bailey during cross–examination. On redirect, the trial judge sustained the defendants' objection to Phillips' inquiry about the sale price of the Negler tract because there was no showing that the two pipelines crossing that tract were similar to the pipeline on defendants' property and that the pipelines similarly encumbered the Negler tract. Although Phillips now assumes in its brief that the pipelines on the Negler tract were gas transmission pipelines, the trial record fails to reflect this fact and is devoid of any showing of similarity between these pipelines and the pipeline crossing defendants' property. Without this showing of similarity between the pipelines, we cannot find the trial judge's determination was an abuse of discretion.

The second of these complaints also raises the question of relevancy. Phillips argues that evidence of land development in St. Louis County, around the same pipelines as the pipeline in question, was relevant to rebut defendants' evidence that many people in the "market area" would not buy or develop land that had a pipeline or pipeline easement across it. Phillips' conclusion that the "market area" includes St. Louis County apparently rests on a remark by its expert Bailey during cross–examination that ninety percent of his sales of Franklin County property were to residents of St. Louis County. Thus, Phillips reasons the "market area" in question should also

include St. Louis County and, further if residents of St. Louis County buy land in St. Louis County around pipelines, they likewise will buy land in Franklin County around pipelines. However, Phillips made no showing that the market conditions for the sale of property in St. Louis County are the same as the market conditions in Franklin County and, thus, Phillips failed to show the factors which make property encumbered with pipelines or pipeline easements marketable in St. Louis County have the same effect on property similarly encumbered in Franklin County. Without a showing of similarity of market conditions in St. Louis County and Franklin County, Phillips failed to lay a proper foundation for the introduction of evidence of land development in St. Louis County and, thus, the trial judge did not abuse his discretion when he rejected this evidence on the grounds that there was no showing the two markets were comparable or similar. *See State ex rel. State Hwy. Com'n v. Drisko*, 537 S.W.2d 645, 649 (Mo.App.1976).

Phillips also characterizes defendants' value evidence as being calculated to impress the jury that value of property in general is substantially depreciated because of fear of pipelines or pipeline easements, and, therefore, the evidence of development of land in St. Louis County around pipelines was relevant to rebut defendants' value evidence. We do not agree with the precise characterization of defendants' value evidence. Taken in context of the question put to him, the testimony of defendants' expert Noonan concerning depreciation caused by fear of pipelines was primarily directed to Franklin County and the 1970 pipeline explosion. Barklage, defendants' other expert, did testify that he would not develop property with pipelines on it, but he qualified this testimony by his statement that the location and "ease" of development

---

2. Phillips correctly paraphrases a statement in the *Koberna* case that unless the differences in properties are great enough to make evidence of these differences irrelevant or immaterial *as a matter of law*, the differences go to the weight of the evidence rather than to its admissibility. However, the Court then went on to state that the trial judge has considerable discretion in determining the admissibility of such evidence. The two statements are not necessarily consistent. However, we believe the latter statement is correct and read the former statement as simply requiring the trial judge to exercise his discretion properly.

are the "big thing(s)" involved in developing property. Taken in this context, and without a showing of similarity between the market conditions in Franklin County and St. Louis County, defendants' value evidence would not necessarily be rebutted by Phillips' evidence of land development in St. Louis County and, thus, we cannot say the trial judge abused his discretion in rejecting such evidence. *State ex rel. State Hwy. Com'n v. City of Sullivan*, 520 S.W.2d 186, 190 (Mo.App.1975); *see also Storm v. Ford Motor Company*, 526 S.W.2d 875, 878 (Mo.App.1975).

Phillips additional complaint that it was improperly prohibited from cross-examining Noonan about his experience as an appraiser of St. Louis City and County properties was not raised in the motion for a new trial and, thus, this complaint is not preserved for appeal. Rule 84.13; *Hawkins v. Burlington Northern, Inc.*, 514 S.W.2d 593, 601 (Mo. banc 1974).

■ Finally, Phillips complains that defendant Victor Voss was improperly permitted to testify about damages he sustained as a result of the construction of the 1972 pipeline. Phillips concedes that evidence of actual damages done by a condemnor on a right-of-way or easement during construction is admissible providing the damage could have been reasonably anticipated and the acts were not tortious. *Kamo Electric Cooperative v. Baker*, 287 S.W.2d 858, 862 (Mo.1956). However, Phillips argues the trial court erred in failing to instruct the jury as to how this construction damage must be considered and in permitting defendants to place a monetary value on each item of damage.

■ Prior to the adoption of M.A.I., it may well have been proper to instruct the jury concerning the proper consideration of evidence of damage done by the condemnor during construction. However, as we stated in *Northeast Missouri Electric Power Coop. v. Cary*, 485 S.W.2d 862, 867 (Mo.App. 1972):

"(C)larification as to the consideration to be given by the jury of evidence of construction damage is more properly left to argument with respect to the elements to be considered in arriving at damages under M.A.I., 9.02."

Thus, failure to give a specific instruction concerning construction damage is not inconsistent with present M.A.I.

■ Furthermore, in our review, we do not conclude, as Phillips does, that the monetary itemization of these damages necessarily misled the jury and caused it to compound defendants' damages. Phillips points out that, after the case was submitted the jury requested the actual itemization of defendants' damages and, Phillips argues, this request makes the jury's confusion self evident. We disagree. Although Phillips' inference is consistent with the jury's request, it is not the only possible inference. Equally consistent and sensible is the inference that the request simply indicated the jury's inability and failure to recall this requested information. The request alone neither defines the motive for the request nor how the requested information would be used.

It may well have been error to permit defendants to place a monetary value on each of these items of damage. However, the jury was properly instructed to determine damages under the precise directions contained in MAI 9.02.[3] More important, in their closing argument, defendants correctly and explicitly informed the jury that the construction damages were to be considered under the directions contained in MAI 9.02. Thus, on the basis of the present record, we cannot conclude that the jury was misled and Phillips prejudiced by the monetary itemization of the construction damages.

3. MAI 9.02, as given reads:
"You must award the defendants such sum as you believe was the difference between the fair market value of defendants' whole property immediately before the taking on October 30, 1972 and the value of the defendants' remaining property immediately after such taking, which difference in value is the direct result of the taking and of the uses which plaintiff has the right to make of the property taken."

The judgment of the trial court is affirmed.

DOWD, P. J., and CRIST, J., concur.