**WOOD RIVER PIPELINE COMPANY,**
Plaintiff–Appellant,

v.

**William and Barbara SOMMER,**
Defendants–Respondents.

No. 53167.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 26, 1988.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
Aug. 24, 1988.

Application to Transfer Denied
Oct. 18, 1988.

Samuel C. Ebling, St. Louis, for plaintiff-appellant.

J.B. Carter, St. Louis, for defendants-respondents.

PUDLOWSKI, Judge.

The appellant, Wood River Pipeline Company ("Wood River") appeals from a jury award in the amount of $40,000 in favor of the respondents, William and Barbara Sommer.

The respondents operate a vegetable farm on a twenty acre parcel of land in St.

Charles County, Missouri. In 1981 Wood River condemned a fifty foot easement running diagonally across the Sommer's property in order to construct and maintain an oil pipeline. Commissioners were appointed pursuant to Section 523.040, RSMo (1978) and assessed damages resulting from the condemnation at $9,000. Both parties filed written exceptions to the assessment of the Commissioners and the case came before a jury on the issue of damages in October 1986. After a mistrial was declared in that case, it was retried on January 20, 1987.

Barbara Sommer testified on behalf of respondents as to the value of the land taken. In her opinion, damage to the property totaled $42,500, the bulk of which was damage to the remainder of the property attributed to the presence of the pipeline. Dub Crutcher, a real estate appraiser, testified as an expert witness on behalf of Wood River. He used the market approach to arrive at a total damage figure of $4,360, the value of the land taken. He stated that the existence of the pipeline on the Sommer's land had no effect on the market value of the remainder. The jury returned a verdict of $40,000 in favor of the Sommers.

On appeal Wood River raises seven points for our consideration. The allegations of error set forth in points I, II, and III of appellant's brief concern Barbara Sommer's testimony as to the risk of pipeline leakage and its effect on the market value of her land. We will address these issues first.

Appellant's argue that the trial court erred in permitting Barbara Sommer to testify as an expert witness in that she was competent to testify only as an owner. In permitting her to do so the court allowed her certain evidentiary exceptions reserved only for experts. In particular, Sommer's testimony regarding the risk of pipeline leakage and resulting diminution in value of the land, it is argued, was speculative, conjectural and was not reasonable. Because such testimony was based on her "subjective fear" an improper standard, and was given by someone not competent

to testify to such matters, Sommer's testimony lost its probative value and should have been excluded. Had the court excluded such testimony the remaining evidence on the record would have been insufficient to support the verdict rendered. When admitted, however, the testimony was "tainted" and resulted in prejudice to the appellant as manifest by an excessive verdict.

■ It is not disputed that the owner of real property while not an expert is still competent to testify as to the reasonable market value of his land. This rests on the assumption that he is particularly familiar with the characteristics of the land as well as its actual and potential uses. *Shelby County R–IV School District v. Herman,* 392 S.W.2d 609, 613 (Mo. 1965); *Casada v. Hamby Excavating Co., Inc.,* 575 S.W.2d 851, 854 (Mo.App.1978). The landowner, however, must show that he is familiar with the facts which give the property value. 5 Nichols on Eminent Domain Section 18.4[2]. When a landowner's opinion is shown to have been based on an improper foundation or improper elements his opinion loses its probative value. *Shelby County,* 392 S.W.2d at 613.

■ Evidence of damage to realty is, by its very nature, speculative. *Ward v. Deck,* 419 S.W.2d 286, 290 (Mo.App.1967). It is to be expected that an owner's opinion, like that of an expert will be based to some degree on indirect or hearsay knowledge but will still be admissible. *Lustig v. U.M.C. Industries, Inc.,* 637 S.W.2d 55, 61 (Mo.App.1982). Any lack of professional experience on the part of the landowner goes to the weight and not the competency of the testimony. *Casada,* 575 S.W.2d at 856.

■ *Phillips Pipe Line Co. v. Ashley,* 605 S.W.2d 514 (Mo.App.1980) provides guidance in this case. In a condemnation case, any element of damage which results in a diminution of the market value of the land is a factor that must be considered in assessing damages. *Id.* at 517. A condemnee should recover for any decrease in value resulting from any factor a willing purchaser would consider detrimental to the remaining property. Any risks that

may result from the taking must be shown to be reasonably probable before they can be considered as proper elements in computing the diminution in value of the remainder. *Id.* Since it is the fear caused by the risk which decreases the value of the land rather than the risk itself, that fear is properly considered if there is a basis in reason for it. *Id.* at 518. In order to show the fear has a basis in reason or experience, the landowner must show an actual danger as basis for the fear, or that the fear is reasonable if not based on actual experience. *Id.*

It is abundantly clear from the record that Barbara Sommer was intimately familiar with the land she farmed. As the bookkeeper for the business, she had in-depth knowledge of both the physical and financial operation of the farm. She was familiar with the surrounding land, and in particular, the sale of comparable parcels in the same area.

Sommer estimated the fair market value of the land before the taking at $172,300. This figure was comprised of $26,800 paid for irrigation pipes; $70,000 for the land ($3,500 per acre) based on her knowledge of a comparable sale near the property; $50,000 for the home on the land; and $25,500 for the pump and well.

During the course of construction, irrigation pipes were damaged, crops were lost and the nature of the soil over the easement was changed making plowing difficult. Wood River had installed a device in the easement called a "cathodic protection wire" to cut down or prevent pipeline corrosion. A nearby pipeline was being replaced due to corrosion in the pipe which, if left untreated, could result in leakage and ground contamination. A pipeline across from another parcel owned by the Sommers had been broken and had caused damage. Sommer felt that this risk would affect the market value of her property.

This injury to the land decreased the fair market value of the land to $129,600. This was comprised of $4,300 for 1.26 acres actually taken ($3,500 per acre); $200 damage to irrigation pipes; $8,000 for potential loss of crops and $30,000 damage to the remainder due to the risk of leakage. Total damages, in Sommer's opinion, resulting from the taking were $42,500.

■ After reading the record and the arguments advanced by Wood River, it is clear that Sommer was competent to testify as to diminution value by virtue of her familiarity with the land. The testimony as to the risk of pipeline leakage and contamination is a factor that would be considered by a willing buyer and seller when engaging in a land sale transaction. The fear caused by the risk had basis in reason and thus was properly considered by the jury. Sommer testified as to two nearby incidents of pipeline leakage of which she had personal knowledge. Because her testimony was based on actual experience the risk was properly considered as it related to future damage and damage to the remainder. *Phillips*, 605 S.W.2d at 518. Any lack of experience on the part of Sommer went only to the weight of her testimony. Because we find Sommer's testimony competent and admissible, appellant's claim regarding the substantiality of the evidence to support the verdict must, necessarily, fail.

■ In point six appellant argues that the jury's verdict was against the weight of the evidence in that the only substantial evidence adduced at trial was Crutcher's testimony. This argument assumes that we find Sommer's testimony incompetent and inadmissible. We have concluded, however, that Sommer's testimony was properly considered and provided substantial evidence to support the verdict. Point denied.

■ In a related point, appellant argues that the trial court erred in admitting into evidence a safety advertisement which appeared in a publication entitled "Farmland News." The article contained a warning designed to alert farmers to the signs of pipeline leakage. Wood River argues that the advertisement was hearsay and that Sommer, who was unqualified as an expert, was not entitled to rely on that document in concluding that the risk had an impact on the reasonably prudent purchaser.

The court admitted the advertisement for the purpose of showing the knowledge of the general public regarding the risk of pipeline leakage. The advertisement was not offered to prove the truth of the matter asserted and thus was not hearsay. After careful consideration, the arguments contained in Points I, II and III of Wood River's appeals are without merit and are accordingly denied.

In its fourth point Wood River argues that the trial court erred in admitting into evidence a photograph of Mr. Sommer on his tractor with the front wheels elevated approximately two feet off the ground. Barbara Sommer testified that after the pipeline was installed the soil over the easement became heavier and clay-like in consistency. This change in consistency made plowing difficult in that when the tractor passed over the easement area the plow became bogged down while the front end of the tractor lifted off the ground. This presented a risk of flipping the tractor while plowing. Sommer stated that the photo fairly and accurately depicted conditions in and around the easement area and events she had personally observed while watching her husband plow the area. Appellants argue that the photo was irrelevant and "depicted a calculated stunt intended to make the passion and prejudice of the jury" which resulted in an excessive verdict.

 The admission of photographs is within the discretion of the trial court and its ruling will not be disturbed on appeal absent an abuse of that discretion. *State Highway Comm'n v. Yackel,* 445 S.W.2d 389, 391 (Mo.App.1969). The party who offers a photo in evidence must show that it is an accurate faithful representation of the place, person or subject it purports to portray. This authenticity may be established by any witness who is familiar with the subject matter of the photo and is competent to testify from personal observation. *State Highway Comm'n v. Cone,* 338 S.W.2d 22, 27 (Mo.1960). The fact that a photo is taken before or after an event does not make the photo inadmissible if the extent of the changes are explained. *State*

*Highway Comm'n v. Eilers,* 406 S.W.2d 567, 571 (Mo.1966).

 The photos at issue in the cases cited by appellant are much different than the photos in this case. In *Snodgrass v. Headco Indus., Inc.,* 640 S.W.2d 147 (Mo. App.1982) the defendant, in a libel and slander action, sought to have nude photos of the plaintiff admitted into evidence. This court concluded that the trial court did not err in refusing to admit the photos given their lack of relevance and inflammatory nature. In *Faught v. Washam,* 329 S.W.2d 588 (Mo.1959) the defendant argued that he had been prejudiced by the admission of photos of the plaintiff's severely injured foot and thigh. The court concluded that the admission of the photos depicting "sympathy-provoking injuries in 'high and unrealistic colors'" had a probable inflammatory impact on the jury. We fail to see how a photo of a man performing a "wheelie" on a tractor can generate the kind of passion and prejudice envisioned in the above cases. Point denied.

In point five appellants argue that the trial court erred in admitting photographic and testimonial evidence of irrigation pipes that were damaged in the course of constructing the pipeline. Mrs. Sommer testified that in anticipation of construction she had removed some of the irrigation pipes and placed them in a spot she thought was off of the right of way. During construction, the pipes were damaged. Wood River argues that such damage could not have been reasonably anticipated at the time of the taking and thus evidence of the damaged pipes improperly admitted.

 When part of a tract is taken the owner of the parcel is entitled to damage caused by the use of the property for the purpose for which the comdemnation is made. Such use embraces the construction improvement and maintenance of the project. *Kamo Electric Cooperative v. Baker,* 365 Mo. 814, 287 S.W.2d 858, 861 (1956). Damage suffered in the course of construction must have been reasonably anticipated in order to be recoverable, *Northeast Missouri Electric Power Coop-*

*erative v. Cary,* 485 S.W.2d 862, 866 (Mo. App.1972).

 At the time of the taking the Sommers' property was improved by an extensive irrigation system. They irrigated their property throughout the construction of the pipeline. The fact that the pipes were damaged substantiates the claim that such damage could have been reasonably anticipated. *State Highway Comm'n v. Ellis,* 382 S.W.2d 225, 233 (Mo.App.1964).

Appellant's seventh point is redundant and has already been addressed. Finding no error, we affirm the judgment of the trial court.

STEPHAN and DOWD, JJ., concur.