**NORTHEAST MISSOURI ELECTRIC POWER COOPERATIVE, a corporation, Plaintiff-Appellant,**

**v.**

**William M. CARY and Patsy Ruth Cary, husband and wife, and William M. Cary, Executor of the Estate of Vivian J. Cary, Deceased, Defendants-Respondents.**

**No. 34124.**

Missouri Court of Appeals,
St. Louis District.

March 28, 1972.

Motion for Rehearing or for Transfer to Supreme Court Denied April 26, 1972.

Application to Transfer Denied June 14, 1972.

Rendlen & Rendlen, Hannibal, for plaintiff-appellant.

Mitchell & Meade, Palmyra, Zenge & Smith, Canton, for defendants-respondents.

LACKLAND H. BLOOM, Special Judge.

Appellant appeals from a $9,000 judgment entered in favor of respondents after jury verdict. Appellant successfully condemned a right-of-way for a power line across respondents' 335 acre farm in Marion County. Commissioners assessed respondents' damages at $1500. Exceptions were filed and the cause was tried to a jury resulting in the verdict and judgment aforesaid.

The easement taken was a strip 150 feet wide and approximately 4696 feet long running diagonally across respondents' farm. This farm contains 253 acres of crop land plus a slough and timber area. It is bottom land protected by a levee. There was no dispute as to the highest and best use of the land being for agricultural production. Appellant has placed on the easement six "H" frame structures consisting of poles, wires, crossarms, insulators, guy wires, and anchors. Each structure has two adjoining poles approximately fourteen feet apart. The entire easement taken consists of 16.2 acres.

The easement taken was perpetual for the purpose of constructing, operating and maintaining thereon an electric transmission and distribution line for that section of rural Missouri. Appellant obtained the right to clear and keep clear the right-of-way and the immediately adjoining land of structures, obstructions and growths. Appellant also obtained a perpetual easement to temporarily open fences now or hereafter constructed within the right-of-way and to cut down and trim trees and remove structures and obstructions within the right-of-way or near or extending into the right-of-way that may endanger the electric transmission and distribution lines. Appellant claimed the right to pile timber and brush cut and cleared on and from the right-of-way along the edge of the right-

of-way. The Petition contained the following covenant:

" . . . Petitioner hereby covenants and agrees to pay to the owner or owners of the said lands the actual damages to the realty (other than resulting from clearing and keeping clear the rights of way) and damages to growing and harvested field crops occasioned by reason of entries upon said lands for the purpose of construction, reconstruction, replacement, repair, maintenance and operation of said electric transmission and distribution line. The use by the owner or owners of said lands over which the rights of way are sought will not be obstructed or interfered with by petitioner except insofar as this may necessarily result from the activities set forth above and provided for in Paragraph IV hereof."

Since the errors claimed by appellant go primarily to issues relating to the reception of evidence, the facts with respect thereto will be more fully considered in passing upon the various points of error raised.

■ Appellant claims the trial court erred in allowing the respondents in their opening statement to refer to damage to the realty and to crops during and after construction of the power line. Since the validity of appellant's position depends upon the admissibility of the evidence with respect to damage to the realty or to the crops, which appellant also claims as error, these contentions will be reviewed together.

During his opening statement to the jury respondents' counsel stated that their witnesses in valuing the land would take into consideration, "That during the construction of this power line the 150 foot strip, the sixteen-plus acres was considerably roughed up." Objection of appellant was initially sustained. Following a conference outside the hearing of the jury the legal issue between the parties as to the propriety of the evidence to be offered by respondents was fully framed both for the balance of the trial and on this appeal. Because their respective contentions were and are contained in the argument to the Court relative to the opening statement they are set out, in part, as follows:

"MR. MITCHELL: Well, in the opening statement the defendants will tell the jury that they are going to show that during construction of this power line, the easement area, the 150 foot easement area was cut up by ruts two to two and a half feet deep; that they dug holes and all around the whole 150 feet where the poles were put in, it was rough, that they didn't clean up this damage, and that it was necessary for the land owner and his tenant to clean it up. Also that, even after they had smoothed it out, there were still low places and that for the last two years since that time there has been a reduction of the production on the easement area, or at least, the cut-up part of that area, and we intend to try to show that by our witnesses, and that this was directly caused by the manner in which the construction work was done, and that it could have been foreseen at the time they started the construction."

"MR. RENDLEN: We object to the statement of counsel in the opening statement, and introduction of any evidence thereafter, with respect to matters which occurred after the taking on December 10, 1968, as being beyond the realm and scope of this trial; · that the construction work was done under a contract by an independent contractor, and that any damage which this contractor may have inflicted upon the land is the responsibility of the contractor, and not of the plaintiff in this matter. Secondly, that the damage to the land itself one way or another, would not be an item foreseen by the plaintiff as reasonably to follow the construction; that it could not have been foreseen by the plaintiff that

the contractor, if he failed to exercise due and proper care in the construction, would not himself remedy any conditions which he created. . . ."

"MR. MITCHELL: . . . And it is our contention that any prospective buyer of this ground on a date immediately before the taking would have bought it with the idea that this construction process was going to go on, that he would have bought it with the idea the poles— that there had to be holes for those poles and that that was going to throw dirt out on the ground, and he would have bought it with the idea that they would not have finished that construction project in any one week, and that there would be rainy periods and soft ground during that time, and that the ground would thereby be rutted or cut up, or roughed up, and that these are elements of damages foreseeable and which any prospective buyer would have considered."

The trial judge, apparently impressed with respondents' contention that the damages respondents claimed would have been foreseeable by a prospective purchaser on the day of taking, reversed his ruling and permitted the statement to be made and thereafter the evidence to be received.

The evidence complained of is summarized as follows:

Vivian J. Cary, one of respondents, now deceased, stated that she saw the easement area and there were "very deep ruts", "very rough and very deep".

Howard Pyle, the tenant who farmed the land, testified the ruts were two and one-half feet deep and deeper in some places. To farm the area it was necessary for him to level the ground with a disc and it took him three days working 14 to 16 hours a day. Because of the necessary leveling work he was delayed in getting in the crop

three days and rains came and caused an additional ten day delay. As a result the crop grown in 1969 and 1970 was 25 bushels less per acre on the easement than on the rest of the farm.

The witness also complained that two inches of white rock was spread around the poles making it hard on a scythe. Evidence was received that weeds grew around the poles in 1969 and 1970 and that ground hogs burrowed holes around the poles. Pyle testified the beans grown on the easement in 1969 were not as good as those on the remainder of the farm because they were planted ten days late.

One of the respondents' witnesses, Robert Allen Bross, in testifying as to the value of the farm before and after the taking said he took into consideration the crop damage caused by the ten day delay in planting the 1969 crop.

Witness Paul Gash testified that he saw respondents' ground under construction and it was very wet and ". . . they cut quite a few ruts going up through the field building their lines with heavy equipment."

T. C. Christner testified that during construction the contractor used heavy machinery, depressed the land in the area, cut ruts knee deep, pushed the ground out, compacted the land three feet deep, hauled in two inch stone and white rock and left the area around the structures all full of rocks which affected combining, mowing, plowing and discing.

Respondents contend the evidence as to ruts and crop damage resulting from construction were properly admitted under the holding in Kamo Electric Cooperative v. Baker, 365 Mo. 814, 287 S.W.2d 858.

*Kamo* also involved an easement for the construction, operation, and maintenance of an electric transmission line. There, too, the issue on appeal was the propriety of the admission into evidence of testimony

concerning the damage on the right-of-way which occurred during the construction of the line. The Supreme Court restated the guidelines as follows, 1. cit. p. 861:

"The general rule is well established in this State that, if a part of a tract of land is taken by condemnation, the just compensation to which the owner is entitled, referred to as damages, is the difference, if any, between the fair and reasonable market value of the entire tract of land before and after the appropriation of said part. . . . It is also well established that the question of damages is to be determined with reference not to the time of trial nor to the time of the construction of the project, but to the time of the appropriation. . . ."

The Court recognized that when only part of a tract is taken that damages are not limited to those resulting from the "mere severance of title" but "include damages caused by the use of the property for the purpose for which the condemnation is made. Such use embraces the construction of the work or improvement and the maintenance, use and operation of the same."

■ The true test in determining what damages are recoverable as a result of the taking is to measure the actual reasonably anticipated damages done or which will be done by the condemner on the right-of-way during construction *which at the time of the appropriation can be held to have cast a burden upon the entire tract.* Stating the test in the light of the specific case before the Court, the question is would a prospective buyer on December 10, 1968, in appraising the depreciation in the fair market value of the respondents' farm by reason of the proposed construction and lawful use of land for the proposed transmission lines have anticipated that a delay would result in planting the 1969 crop; that because of the delay the crop would be inferior; that by reason of construction

knee deep ruts would occur, gravel and stone would be spread on the right-of-way, weeds would grow around the poles, and the ground would be compacted so as to reduce its crop potential in 1969 and 1970.

Certainly it would not have been unreasonable for a sophisticated purchaser of farm land in December of the year to be concerned as to what effect the construction of a transmission line across farm land, already plowed for the spring planting, might have on the immediate and near future crop. He could well expect that construction would not be completed before the crop was planted and would delay the planting; that lawful construction activity, non-tortious, would damage the ground by ruts, compaction, debris, or otherwise which would delay the planting of the crop and affect both its yield and quality for the current and following year. Where, as in this case, hindsight substantiates the reasonable expectations, this Court cannot say that the damages complained of are speculative or remote. We think the jury was entitled to consider the effect of the damages to the land during construction and their effect on the 1969 and 1970 crop in assessing the burden imposed on the entire tract by reason of the taking on December 10, 1968.

Nor do we believe that a prospective purchaser would give much credit in fixing his evaluation of the farm to the covenant set forth in appellant's petition as to payment for damages to growing crops, even assuming it covered this particular situation. More likely the prospective purchaser would consider a "bird in the hand worth two in the bush" and reduce his purchase offer for the anticipated damages.

■ The tenant Pyle testified he farmed that land for twenty-five years and that the planting delay caused by the necessity of restoring the land to cultivation after the construction damage reduced the yield and quality of the crop. He testified that

he lost 25 bushels an acre over the 16 acre easement for both 1969 and 1970 due to the delay in 1969 and the compaction of the ground, the presence of the gravel, weeds, and holes and would experience permanent difficulty in farming around the structures. Perhaps as appellant suggests records of actual crop production from 1968 to 1970 would have provided more reliable evidence. But we cannot say that Pyle's testimony was wholly speculative and was not competent evidence of loss in yield which was for the jury to weigh and evaluate.

■ Appellant complains that the Court erred in not properly instructing the jury with respect to the consideration to be given the evidence of construction damage. It is true the Court in Kamo Electric Cooperative v. Baker, *supra*, [8, 9] stated: ". . . However, when evidence of damage done during construction is admitted the jury should be properly instructed concerning the consideration to be given it." The Kamo Electric case was decided in March of 1956 prior to the adoption of M. A.I. In the instant case the Court read to the jury, as Instruction No. 3, M.A.I. 9.02 as follows: "You must award defendants such sum as you believe was the difference between the fair market value of defendants' whole property immediately before the taking on December 10, 1968, and the value of defendants' remaining property immediately after such taking, which difference in value is the direct result of the taking and of the uses which plaintiff has the right to make of the property taken." It was mandatory, of course, that the Court give this instruction. State ex rel. Kansas City Power & Light Co. v. Campbell, Mo.App., 433 S.W.2d 606. Appellant offered as Instruction No. 7, now M.A.I. 34.02, which the Court refused to give, the following: "The evidence of ruts which were cut into the surface of defendants' land during the construction of the power line is withdrawn from the case and you are not to consider such evidence in arriving at your verdict."

Our holding that the Court did not err in admitting the evidence sought to be withdrawn by Instruction No. 7 sustains the Court's action in refusing to give the instruction. We believe that clarification as to the consideration to be given by the jury of evidence of construction damage is more properly left to argument with respect to the elements to be considered in arriving at the damages under M.A.I. 9.02.

■ Appellant next contends that the trial court erred in permitting various witnesses to give their opinion as to the value of respondents' farm before and after the taking since the witnesses were not qualified as "experts".

It is not necessary to set out the specific testimony as to the qualification of each witness who expressed an opinion as to the value of the farm. It is sufficient to point out that each lived in the area of the farm, were engaged in farming or owned farms, were personally familiar with the respondents' farm both before and after December 10, 1968, and the crops produced thereon. Each kept abreast of farm prices in general, some had bought and sold farms in the county and all had discussed farm and land values with real estate men and others in the county. They subscribed to and read various farm publications.

■ None of them testified as to any knowledge of sales of comparable farm lands and, of course, could not take into consideration such sales in formulating their opinions. Appellant states that to qualify as an expert ". . . the witness must have knowledge of voluntary sales of other similar or comparable property made in the same general vicinity and not too remote in time." That such knowledge might carry added weight in supporting an opinion, we have no doubt; but the argument that it is essential to the expression of an opinion we reject.

The case of State ex rel. State Highway Commission v. Bloomfield Tractor Sales,

Inc., Mo.App., 381 S.W.2d 20, cited by appellant lends only slight support to its position.

After stating that as a general rule the value of land is established by voluntary sales of similar property in the area and that a witness must in ordinary circumstances have some knowledge or information as to such sales, the Court points out that the extent of the knowledge required varies with the nature of the subject matter and the frequencies of sales in the area.

The Court states, 1. cit. p. 24: "One need not be an 'expert,' in the sense that word is ordinarily used, to testify as to the value of land. If the witness knows or has inspected the property, and if he has such information, knowledge, and skill which enable him to form an intelligent judgment, and if this knowledge and information is superior to that possessed by the ordinary person who composes the jury, then he should be permitted to testify. Beyond that any deficiency he may have goes to the weight of his testimony, not to the qualification . . ."

The above quotation was cited with approval by the Supreme Court in State ex rel. State Highway Commission v. Barron, Mo., 400 S.W.2d 33, 36. In the case of State ex rel. State Highway Commission v. Hart, Mo.App., 417 S.W.2d 193, it was held that the trial court had not abused its discretion in permitting a life-long resident of Texas County who occupied a farm in the area for thirty years and who had known the property involved since he was a young man and who testified that he was interested in and kept abreast of property values generally in Texas County and who knew what some farms and properties in the county sold for, from expressing an opinion as to the value of the property in-volved immediately before and after the taking. The Court properly stated that the witness possessed knowledge of the subject matter superior to that of the ordinary juror so as to render his opinion admissible. Any shortcomings in his experience would not detract from his qualifications but only go to the weight to be afforded his testimony. ". . . The qualifications necessary of a witness to testify as an 'expert' is primarily for determination by the trial judge and his discretion in the matter will not be disturbed on appeal 'unless abused or exercised in clear error of law.'" State ex rel. State Highway Commission v. Hart, supra, 1. cit. p. 196. We find no abuse of discretion on the part of the Trial Court in permitting respondents' witnesses to express their opinions as to values.

■ Appellant states that respondents' witnesses' estimate of the damages by reason of the taking ranged from $13,400.00 to $26,800.00 and averaged $18,916.66, whereas the witnesses for appellant testified damages were from $2,340.00 to $2,750.00, an average of $2,530.00. Appellant draws the conclusion that this clearly demonstrates the error in allowing respondents' witnesses to testify as their testimony was "unrealistic and highly prejudicial to the appellant." Appellant contends that the award of $9,000.00 was clearly excessive. The verdict was within the range of the valuations given. Since we have found the Trial Court did not abuse its discretion in admitting the testimony as to value we will not disturb the judgment, based as it is on conflicting evidence. State ex rel. State Highway Commission v. Ellis, Mo.App., 382 S.W.2d 225, 236.

Finding no error in the proceeding below, the judgment is affirmed.

BRADY, C. J., and DOWD, J., concur.