CITIZENS ELECTRIC CORPORATION,
Respondent,

v.

Robert W. AMBERGER et al., (Tracts 12
through 18), Appellants.

No. 40146.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 20, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 14, 1979.

Albert C. Lowes and Thomas A. Ludwig, Buerkle, Lowes & Beeson, Jackson, for appellants.

Claude C. Knight, Hannegan, Knight, Kennedy, Schoenberg & Weber, Inc., St. Charles, for respondent.

WEIER, Chief Judge.

This is an appeal from a judgment awarding damages to seven landowners for a high-line easement across their land. The plaintiff, Citizens Electric Corporation, obtained the easement through condemnation proceedings. Exceptions to the commissioner's report were filed by the utility and the landowners. All seven cases were consolidated and tried before the court without a jury. From the resulting judgment, the defendant-landowners have appealed setting out six contentions of error on the part of the trial court which they maintain entitle them to a new trial.

Failure of substantial evidence to support the court's award of damages was first charged for the reason that the values of the various tracts of land immediately after the taking by the utility company as determined by the trial court were not supported by any of the evidence. At trial, values of the seven tracts before and after the taking by the utility company were established by presenting testimony of expert witnesses and the owners. The defendant-landowners offered the testimony of three expert witnesses who made appraisals of land values on the seven tracts. The owners of each tract also took the stand to testify as to the value of their land before and after

the taking of the easement. Plaintiff-utility company qualified a land appraiser as an expert witness, who testified as to the values of the particular tracts before and after the imposition of the easement. This valuation testimony varied greatly, depending on whether the landowners' or the utility company's witnesses were on the stand.

In his findings, the trial judge determined the before and after valuation of each particular tract and then computed from these figures the damage award. In three instances, that is on tract 12 owned by Wilbert Neislein and Barbara Neislein, his wife; tract 13 owned by Charles E. Henderson and Frances E. Henderson, his wife; and tract 18 owned by Norman Meisner and others, the court found an after-taking value in excess of the amount found by any witness. In two instances, that is tract 14 owned by Ella F. Oster and 16 owned by Willard C. Fritsche and Kathryn M. Fritsche, his wife, and Gerald W. Fritsche and Sandra K. Fritsche, his wife, the court found an after-taking value higher than any land appraiser expert witness but within the amount of after-taking valuation testified to by the landowners.

It is a fundamental principle in eminent domain cases where there is a partial taking of the total tract that "the measure of just compensation is the difference between the fair market value of the landowners' property immediately before and immediately after the taking." *State ex rel. State Highway Commission v. Wilcox,* 535 S.W.2d 131, 132[1] (Mo.App.1976). It is equally fundamental that the amount of the award must be within the limits established by the evidence. *Public Water Supply District No. 2 of Jackson County v. Alex Bascom Company,* 370 S.W.2d 281, 290[12] (Mo. 1963). More specifically, "absent other factors, a judgment is within the range of all the evidence if it does not exceed an amount in excess of the highest amount of damages which the evidence will sustain and is not below the lowest amount shown by the party who does not have the burden of proof." *State ex rel. State Highway Commission v. Kemper,* 542 S.W.2d 798,

804[8] (Mo.App.1976). Thus in the determination of the after-taking values of tracts 12, 13 and 18 the court erroneously determined an after-taking valuation in excess of any testimony found in the evidence. The court's findings as to these particular tracts is therefore not supported by substantial evidence, *Murphy v. Carron,* 536 S.W.2d 30, 32[1] (Mo. banc 1976) and the judgment as to these tracts must be reversed and remanded for redetermination of the damages. *State ex rel. State Highway Commission v. Kemper, supra* at 805[9].

The after-taking valuation of tracts 14, 15, 16 and 17 by the court was within the range of the evidence. The after-taking valuation of tracts 15 and 17 was supported by the testimony of at least one professional land appraiser and the after-taking valuation of tracts 14 and 16 was supported by the testimony of the owners of each tract. An owner of real property is qualified to give an opinion as to the value of his property although he is not a real estate expert. *State ex rel. State Highway Commission v. Northeast Building Company,* 421 S.W.2d 297, 301[3] (Mo.1967).

Defendant-landowners next contend that the trial court erred in failing to take into account when assessing damage to the tracts caused by the easement, the damage to several fences. Specifically, the contention is based upon the assertion that the trial court found values in accordance with the utility company's land appraiser and that this expert witness did not consider damage to fences on the property in his valuation. Actually the evidence indicates to the contrary. In describing the various factors that the witness took into consideration in determining before and after value in appraising the seven tracts, this expert for the utility described as one of the factors "depreciation to the fences." The court in its findings with regard to the factors which the court considered referred to depreciation or damages to the fences. Since the effect on the fences was considered in arriving at the total land damage, such contention is without basis in fact.

■ Defendant-landowners further sought reversal because of alleged error in the court's exclusion of a statement volunteered by an expert witness called by the landowners. This ruling was made after the witness stated: "It is a known fact, then, that utilities follow the path of least resistance which results in crossing the best lands that a farmer has." This statement followed a question asked by the utility attorney to have the witness enumerate the various factors that he considered in figuring value where there was not a total taking. Objection was made by the attorney representing the utility as being speculative, conjectural and irrelevant. The objection was sustained by the court. The ruling was correct. A statement as to what utilities generally do, even if true, is not relevant to the issues in this case. It was obviously an effort to influence the trier of fact and prejudice him against the utility company; and since it throws no light on the controversy, it should be excluded. *Switzer v. Switzer*, 373 S.W.2d 930, 939[13] (Mo.1964).

■ It is further contended that the trial court erred in considering the testimony of witness Dockins, the land appraiser testifying for the utility. It is charged that his responses to questions were "so inherently incredible as to be subject to total disbelief." Dockins was qualified as a land appraiser after he was called as a witness for the utility company. No challenge was made to his qualifications at that time. His testimony as to the value of tracts came from direct, first-hand observation of the parcels of land. Although he may have testified that the land value is lower than that found by the landowners' expert witnesses, this disparity alone is not a basis for the charge made as to his credibility. Widespread disparity in expert witness testimony is not a basis for overturning a verdict or finding of fact. It is the prerogative of the fact finder, not an appellate court, to resolve evidentiary conflicts as to values in damages. *State ex rel. State Highway Commission v. Twin Lakes Golf Club, Inc.*, 470 S.W.2d 313, 315[6] (Mo.1971).

■ As an additional point on appeal, the landowners contend that the court improperly allowed the utility company to introduce evidence that the owners were using areas within the 100 foot easements after condemnation to grow crops upon the land subjected to the easement. In support of this contention, the appellants argued that the language of the easement pleaded in the petition was so general that it amounted to a total taking and that any introduction of use by the landowners of the easement land would be contrary to the theory of the taking set forth in the petition. The appellants overlooked the fact that the petition sets out that except for the area required for the transmission lines and the other rights that plaintiff sought to acquire, as alleged, the real estate would not actually be appropriated by plaintiff but would remain for such use by the defendants as would not endanger or interfere with the transmission lines. In support of this clause, the trial court allowed the utility company to place in evidence the fact that the easement land was actually being used by the defendant-landowners for the planting and growing of crops.

■ As previously stated when a part of a tract of land is taken for condemnation, the compensation to which the owner is entitled is the difference if any between the fair and reasonable market value of the entire tract of land before and after the appropriation of the part taken by condemnation. This occurs when the money awarded by the commissioners is paid into court. The question of damages is not referable to the time of trial nor to the time of the construction of the project but to the time of the appropriation. Such damages are not limited to mere severance of title but include those caused by the use of the property for the purpose for which the condemnation is made. This use embraces the construction of the work or improvement and the maintenance, use and operation of the improvement. It would be proper for the trier of fact in determining the burden imposed on the land at the time of the appropriation to take into consideration

that the utility was going to construct an electric transmission line on its right-of-way and that it had the right to patrol the line and to operate and maintain it. It would be proper to consider the effects of construction as it bears upon value. Such matters as ruts, erosion and compaction of the soil, placing of gravel on the ground for passage of heavy equipment and other nontortious acts affect the market value of the remainder of the land as of the time of the appropriation. If the line has been constructed at the time of the trial, actual damage to the right-of-way during construction can be shown as evidence to the extent of the burden cast upon the land at the time of the appropriation except tortious acts which could not have been reasonably anticipated. *Kamo Electric Cooperative v. Baker,* 365 Mo. 814, 287 S.W.2d 858, 861–62 (1956). *See also, Northeast Missouri Electric Power Cooperative v. Cary,* 485 S.W.2d 862 (Mo.App.1972).[1] If such evidence is admissible to show the effect of construction upon the market value of the land, then it follows that use of the land by the owner in planting and production of crops upon the easement is also relevant to indicate the use of the landowner may still have of the easement land. Such use is also relevant as a factor in arriving at after-taking value. We rule this point against the appellants.

Finally, the landowners charge error in the refusal of the trial court to allow testimony of damage done to nonburdened land. One of the owners attempted to testify that there is damage done off one of the easements by the contractor in the construction of the power lines. Because of a rough spot on the easement, the contractor's employees and equipment left the easement, went through an adjoining field and destroyed some of the wheat growing there. Obviously this is not a use of the burdened land contemplated in the easement. Rather it is a tortious destruction of property off of the easement right-of-way

and is the subject of a separate tort action. *Kamo Electric Cooperative v. Baker, supra* at 862–863[11]

The judgment is affirmed with respect to tracts 14, 15, 16 and 17. The judgment is reversed with respect to tracts 12, 13 and 18 and remanded for new trial as to the issue of damages.

SNYDER, P. J., and PUDLOWSKI, J., concur.

1. For a discussion of the cases with regard to future or illegal uses see Happy, Damnum Absque Injuria, 36 Mo.L.Rev. 453, 467 (1971).