STATE of Missouri, ex rel., **MISSOURI HIGHWAY & TRANSPORTATION COMMISSION, Plaintiffs–Appellants,**

v.

**Paul L. BEHLE, et al., Exceptions of Trautman Farms, et al., Defendants–Respondents.**

No. 63070.

Missouri Court of Appeals, Eastern District, Division Two.

Oct. 12, 1993.

Laura A. Schildz & Richard L. Tiemeyer, Chesterfield, for plaintiffs-appellants.

Joe Bill Carter, Kirkwood, for defendants-respondents.

KAROHL, Judge.

The Missouri Highway and Transportation Commission (MHTC) appeals from a jury verdict in favor of the owner of Trautman Farms (landowner) in the amount of $160,000 in condemnation damages. MHTC raises two points on appeal, both of which depend on the admissibility of evidence consisting of construction period damages affecting landowner's property abutting the condemned parcel and construction easement. MHTC charges error first in the admission of construction damage evidence, and second in the failure to give the jury a withdrawal instruction for such evidence. We reverse and remand.

Trautman Farms is a 118–acre rectangular parcel of land located near the intersection of Ferguson and Missouri Bottom Roads in St. Louis County. It was one of several properties included in MHTC's condemnation petition grounded in the need to construct Route 115. A June 15, 1989 order condemned a 16.91–acre portion of Trautman Farms. The condemned strip bisected the farm diagonally, leaving roughly 78 acres on one side of the proposed highway and 23 acres on the other side. A farmhouse and some out buildings on the land were not affected by the taking. The commissioners awarded the owner of Trautman Farms $73,300, an amount that included damages for the per-

manent partial taking as well as a temporary construction easement. On August 30, 1989, this award was paid to the court. Landowner filed timely exceptions to the award, requesting a jury trial.

The jury trial on the issue of damages resulting from the taking was set for September 14, 1992. By this time, much of the construction of Route 115 had occurred. The work was carried out by a contractor hired by MHTC. The highway was built on sand used as fill material to elevate the highway approximately 15 feet above the surrounding ground. The sand was pumped in from the Missouri River using a system devised to filter out the sand and return the water to the river. Temporary berms were built on both sides of the highway to stop the water from flowing onto the Trautman Farms parcel. The drainage ditches between the berms and the fill material for Route 115 carried the water back to the river.

On several occasions during the period of construction, water mixed with sand flowed over the berms onto landowner's crops because the return path for the water became blocked. On some of these occasions, the contractor intentionally cut the berms. Testimony and pictures were admitted demonstrating that some six to ten acres were harmed by the sand and water breaching the berms. In addition, evidence of a "compaction problem" caused by trucks and bulldozers driving on an uncondemned strip of the farm and evidence of damage from a pipe which was temporarily placed on the farm outside the right of way during construction were admitted.

The parties agreed that the highest and best use of the property was for agricultural purposes. The jury heard testimony of valuation figures ranging from $960 to $9000 an acre. One witness testified to $60,000 worth of consequential damages, $42,500 of which was for crop damage incurred during the construction period. The jury assessed landowners' damages at $160,000, and MHTC appealed.

MHTC's first point is the trial court erred in admitting evidence of damages that occurred during the period of construction to

abutting, not condemned, property because landowner failed to lay a proper foundation establishing the damages were foreseeable at the time of taking and not the result of subsequent tortious activity on the part of the contractors. MHTC first raised this issue in a motion in limine before trial. The motion was overruled after lengthy discussion. MHTC preserved the matter with repeated objections during trial. MHTC maintained the position that Missouri cases on condemnation clearly restrict the evidence on damages to those which are foreseeable before construction begins. We agree.

■ To measure damages in condemnation, the factfinder is required to compare the value of the property prior to the taking against its value after the taking. *State v. Starling Plaza Partnership*, 832 S.W.2d 518, 520 (Mo. banc 1992). "The date of the taking is the date upon which the condemnor pays the commissioners' award into court." *Id.* In the present case, the date of the taking was August 30, 1989, therefore, the valuation of damages is temporally restricted to this date. The injuries to the property during construction of Route 115 all occurred in 1991. The trial on landowner's exceptions was held in 1992.

■ When only part of a tract of land is taken, "the damages are not limited to such as result from the mere severance of title caused by the taking, but include damages caused by the use of the property for the purpose for which the condemnation is made. Such use embraces the construction of the work or improvement and the maintenance, use and operation of the same." *KAMO Elec. Coop., Inc. v. Baker*, 365 Mo. 814, 287 S.W.2d 858, 861–62 (1956) (Quoting Lewis, Eminent Domain (3d ed.) § 710.) It is proper for the jury to consider factors resulting from the appropriation that would be reasonably apparent and material to a hypothetical willing purchaser of the land at the time of the taking. *Id.* at 862. Where construction is completed by the time of trial, "the actual damage that was done by the condemner on the right of way during the construction ... may be shown as evidence of the extent of the burden cast upon the land *at the time of the appropriation,* provided that the acts

were not tortious and the damage could have been reasonably anticipated." *Id.* (Emphasis in original text.)

■ If the benefit of hindsight on the date of trial is going to give rise to the admission of construction damages to landowner's property, landowner is required to establish a direct evidentiary nexus between construction damages and the extent of the burden cast upon the land at the time of the appropriation. In other words, a foundation must be laid that the construction damages were reasonably foreseeable at the time of the taking and the result of non-tortious acts on the part of the contractors involved. *State ex rel. Missouri Highway and Transp. Comm'n v. McNary*, 664 S.W.2d 589, 593 (Mo.App.1984). When "reasonably foreseeable" or "reasonably apparent" is measured at the time of the taking, which in practice means before construction begins, we construe such terms to mean only those construction damages which are inherent, inevitable, automatic or certain.

In *Northeast Missouri Elec. Power Coop. v. Cary*, 485 S.W.2d 862 (Mo.App.1972), the admissibility of evidence of construction damages during the erection of power lines was upheld. The dispositive question was framed in terms of whether a prospective buyer on the date of the taking, in appraising the depreciation in the fair market value of the land by reason of the proposed construction, would have anticipated a delay in the planting of the current crop, and resulting inferiority of the harvest on the right-of-way for the next two seasons because of gravel and compaction around the utility poles. *Id.* at 866. Both the trial court and this court answered the question affirmatively. The award of $9000 for the 16.2–acre power line easement was upheld. This case is distinguishable from the present case in many respects. Aside from the obvious differences between a permanent utility easement and a highway traversing one's land, the court in *Cary* accepted the landowner's position that any prospective buyer would be aware of the consequential damages inherent in erecting utility poles at the time of taking. Post holes and very deep ruts along the easement were

not only foreseeable, they were planned to occur.

Similarly, in *Wood River Pipeline Co. v. Sommer*, 757 S.W.2d 265 (Mo.App.1988), evidence of damage to an irrigation system on a vegetable farm during the construction of an oil pipeline was upheld. There, the landowner moved some of the irrigation pipes in anticipation they would be damaged during construction and placed them in a spot she thought was off of the right-of-way. During construction, the pipes were damaged. Again, this type of damage was sufficiently foreseeable to provoke the landowner to prepare for it.

Also, in *State ex rel. State Highway Comm'n v. Ellis*, 382 S.W.2d 225, 232 (Mo. App.1964), the cutting of tree roots during the construction of a sidewalk resulted in the tree becoming so unstable as to fall upon the residence. The court found the cutting of the roots to be a necessary part of the lawful taking, and stated "that the loss of the tree was a result obviously to be anticipated from the cutting of the roots." *Id.* at 233.

However, in *Citizens Elec. v. Amberger*, 591 S.W.2d 736 (Mo.App.1979), a trial court's award of damages to the landowners for an electric high-line easement was held to be in excess of any testimony in evidence. This court denied error in the refusal to allow testimony of damage done off one of the easements by the contractor in the construction of the power lines. *Id.* at 740. There, the contractor's employees and equipment left the easement because of a rough spot, went through an adjoining field, and destroyed some of the wheat growing there. This court stated, "Obviously, this is not a use of the burdened land contemplated in the easement. Rather it is a tortious destruction of property off of the easement right-of-way and is the subject of a separate tort action." *Id.*

*State ex rel. State Highway Comm'n v. Riggs*, 47 S.W.2d 178 (1932), is another highway condemnation case where the trial court erred in admitting evidence of construction damage. The evidence tended to show damage to property outside of the right-of-way resulting from a charge of dynamite set off by an independent contractor during the period of construction without a showing it was reasonably apparent on the day of the taking, and not the result of tortious acts of the contractor. *Id.* at 180.

Landowner in the present case failed to establish a foundation to enable him to introduce evidence of any construction period damages. In particular, the following testimony of landowner's only expert witness shows no foundation was laid to show the sand and water damage to the crops was reasonably foreseeable at the time of the taking:

[Landowner's counsel]: Okay. Now, can you—can—With regard to that particular situation, is this—from—from your background and experience, is this an unusual way to—to obtain fill for road?

[Landowner's expert, Ray Oberkramer]: Well, as far as I'm concerned, it's a new concept. It's been going on for quite a while but—on specialized projects.

Q. And with—with regard to—to the aspect of—of this particular type of—of concept, would the sand, as it filled, and—and the water assert more and more pressure on the berms? Would they—would—Would there tend to be a spreading out?

A. *I don't know. I don't think so.*

\* \* \* \* \* \*

Q. So this would be something that you would normally expect or anticipate, as—as this water got up, that you were going to have some kind of a problem with it?

A. That there *could be a possibility.*

Q. All right. Would it be a possibility that—that would—that would be anticipated and expected or just something that come upon people as a total surprise?

A. *I'm not sure.*

Q. Well, looking at—Well, looking at these an engineer, even though this was something that—that—that is—is fairly new, apparently, as—as an approach to—to—to building, was there anything about this that surprised you that—that those levees would either break naturally and/or they took them out with backhoes?

A. Well, *it surprised me* that they—that they were ruptured every so often and—and the sand allowed to run out. The purpose of—of the—of the berm is to car-

ry the water off this property without getting on the private property. (Our emphasis).

This evidence was not similar to *Ellis*, where the cutting of tree roots on the easement with consequent destruction of a shade tree off the easement was certain to occur as part of the construction. We find no showing that the damages that occurred during the construction of the highway through the Trautman's farm were sufficiently inherent and non-tortious as to permit inclusion of these types of construction damages. Moreover, there was no evidence to support a finding that the method of construction was certain to cause trespass damages. Rather than establishing a foundation that the contractor acted in a non-tortious manner, the evidence supports an inference of negligence on the part of the contractor in allowing drains to clog with sand. These construction damages are properly the subject of a different action.

MHTC's second point, claiming error in the trial court's refusal to give a requested evidence withdrawal instruction to the jury concerning evidence of construction period damages, has merit for the reasons discussed.

Judgment reversed and cause remanded for a new trial.

CRANE, P.J., and CRAHAN, J., concur.